DUTCHOWSKI *v.* HANDY THINGS CO.

MASTER AND SERVANT — INJURIES TO SERVANT — DEFECTIVE MACHINERY—CONTRIBUTORY NEGLIGENCE.

>   In an action against a master for injuries to a servant caused by a board being thrown out of a gang ripsaw, evidence examined, and *held,* that the servant was negligent in unnecessarily going in front of the machine.

Error to Mason; McAlvay, J. Submitted April 27, 1905. (Docket No. 102.) Decided July 21, 1905.

Case by John Dutchowski against the Handy Things Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

The defendant is a manufacturer of wooden ware. It had in its factory a gang ripsaw machine, used to cut lumber from one to three inches thick into squares or strips for the turning lathe. The machine was fastened to the

floor, was five feet long, four feet wide, two feet ten inches above the floor, and was designed to run from one to three saws. The saws were hung on an arbor, fastened below the table near its center, and projected above the table. Above the saws was a metal hood, the forepart of which carried three sprocket wheels which fed the lumber into the saws. The rear part of the hood was in front of a shoe, serving as a carriage for the feed wheels, a cover for the saws, and a weight to hold the lumber down. The hood was lowered and raised by a lever, a piece of maple lumber, fastened over the seat or rear side of the machine between wooden brackets fastened to a beam in the ceiling. A rope was attached to the lever near the center that ran up to the pulley in the ceiling and down to the hood. This lever extended directly over the saws about two feet beyond the front of the machine.

Witnesses differ as to the exact location of the lever, some placing it about over the center of the machine, others a little north of the center, and others still farther towards the north. At one time there was a rope attached to the end of this lever, so that it could be more easily reached. The length of this rope was regulated by the operator to suit himself. The machine was started and stopped by a lever which controlled the belt tightener, and was called the "tightening lever." This was on the side opposite the operator, so that, if the operator desired to stop the machine when in operation, he would have to go in front of it, or around back, a distance of about sixty feet.

The ripsaw was situated at the north end of the room, and its front was about ten or twelve feet from the west wall of the factory. In operating the machine its operator stood at its north side, near the front, at the northwest corner. He took the boards from a car behind him, and adjusted them into the machine along a guide on the saw table. The sprockets then caught the board and carried it through the saws. The tail sawyer received the boards at the back end of the machine, and sent them to other

machines. Sometimes a board became wedged in the saws by bark, splinters, or other means. The machine would then choke and stop. To relieve the machine, the operator would then reach for the hood lever, pull it down, and raise the hood. The usual effect of raising the hood was that the board thus released would be thrown back with considerable force to the front of the machine, and would therefore strike any one standing in front. Sometimes the board would fly back without the raising of the hood. Sometimes the board would be wedged so tight that it would not come back when the hood was raised. The operator or tail sawyer would then push or pry it out, or, if he could not do this, stop the machine by the use of the tightening lever. There was a clutch in the machine within reach of the operator, designed to stop the feed wheels without raising the hood.

About five years previous to the accident which resulted in the injury to the plaintiff, he was operator of this machine for about six months. After that, and until the day of the accident, he worked at the other machines in the factory. For some reason the operator of the ripsaw on the day of the accident did not report for work, and plaintiff took his place. Whether the defendant directed him to go there or whether he volunteered to do it is in dispute, but that fact is immaterial to the controversy. In about 20 minutes after plaintiff had begun to work the machine choked and stopped. Plaintiff reached for the hood lever, but, not getting it, he looked up and reached again, and in so doing placed his body in front of the machine. The board flew back and struck him. So frequently were these boards thrown back in the manner indicated, that some of the plaintiff's witnesses testified that there was a hole in the brick wall in front of the machine, caused by the boards flying out and striking the wall.

While there are several charges of negligence, the only one upon which any liability can be based is that defendant—

"Located this lever so far above and to one side of the standing place of the operator that it could not be reached without getting in front of the saws, and so exposing said operator to very great, unusual, and unnecessary hazard, whenever it became necessary, as it often did, to the knowledge of said defendant, to raise said upper portion of said machine when it had become clogged and stopped."

The plaintiff recovered a verdict and judgment.

*M. B. Danaher* (*Bundy, Travis & Merrick*, of counsel), for appellant.

*Charles A. Withey* and *A. A. Keiser* (*J. E. Richardson*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The theory of the declaration evidently is that the construction of this machine was faulty in locating the lever by which the hood was raised. There is no claim upon this record that the machine was originally faulty in that respect, but the claim is that for some reason this lever at the time of the accident had moved farther to the south, and was located towards and over the south part of the machine. The only reason given for such change, if any change there was, is attributed by one of plaintiff's witnesses to "the wear of the bolt where it was fastened to the clutch, the wearing of the hole," for which reason the lever would swing away from the operator farther than it formerly did. The liability, if any, depends not upon any negligence in the original construction, but upon negligence in not repairing upon notice or knowledge of the defect, or in a failure to inspect. The machine was one in common use. It was unsafe to stand or pass in front of the machine when in operation, because of the liability of the boards to fly back. Every operator, including plaintiff, knew this, and always stood at the side of the machine. Defendant expected its operators to stand there, and had the right to assume that they would stand there in a place of absolute safety. Plaintiff claims that the end of the

hood lever was in a different place from what it was when he first worked upon the machine. The other operators had evidently found no difficulty in avoiding the danger. This appears from the plaintiff's own witnesses. No one had before complained or given any notice of any change in the position of the lever. He testified that he was shorter than the other operators.

Can defendant be held liable because the plaintiff was shorter in stature than other operators? He knew the height of the other operators and his own as well as did his employer. The lever was at the same height above the machine as when he operated it before. He knew the necessity of a rope as well as any one if he could not reach the lever. The lever was in plain sight, but little above the plaintiff's head. He could have seen at a glance the location of the lever, and, if too high for him to reach, he could easily have attached a rope to it before starting the machine. But, assuming that he did not look and see the situation until the machine was choked, he then saw that the lever was beyond his reach, and that he could only reach it by placing himself directly in front of the machine, where he knew that injury was almost certain to follow if he raised the lever, and liable to follow if he did not raise it. Was his action justified by the law? He was not a stranger in a strange place. If he could not reach the lever in safety, it was his duty to stop the machine and remedy the defect without danger to himself. This he could have done by going around the machine, a distance not exceeding sixty feet, and applying the lever to stop it. This would have taken him not to exceed ten or twelve seconds if he walked at the rate of three miles per hour, and not more than half that time if he ran. The time required was almost unappreciable. Instead of taking this course or adopting some other means to reach the lever, he placed himself directly in front of the machine. His sole excuse for thus exposing himself to danger is that he did not realize what he was doing. He testified as follows:

"*Q.* State whether or not you realized, when you reached for the lever the second time, that you were getting in front of the machine?

"*A.* I did not. I reached in haste."

On cross-examination he said:

" I must have stepped in front of the machine when I got hurt. I stepped in front of it when I reached for the lever.

"*Q.* Now, before doing that, you had thought, had you, that it would be dangerous for you to cross over there to relieve the tightener, as you stated a while ago?

"*A.* I didn't have time to think. It was all done in an instant, almost. * * *

"*Q.* Now, if you had stopped to think, and it had occurred to you that it was dangerous to get in front of the saw, either to get the hood lever or the tightener lever, you would not have done it, would you?

"*A.* Didn't have time to think about anything.

"*Q.* Now, if that had occurred to you that the board was caught in there, and that it might be dangerous to get in front of it in attempting to reach one of these levers, there was nothing to prevent you dropping on your hands and knees and being below the bed of the table, so you could have gotten over there to the tightener lever?

"*A.* I never thought of it.

"*Q.* I don't claim that you thought of it, but I say there was nothing to prevent your doing that?

"*A.* I don't know of anything of that kind. It might possibly have been done."

It is apparent that there was no necessity or occasion for the plaintiff to place himself in this position of danger. His employer had never required it, and never expected it. The defendant cannot be held liable because plaintiff acted hastily, and without thought. If the lever was in fact beyond his reach, there is no testimony that the defendant expected or required the operator to expose himself by standing in front of the machine in the attempt to reach it. It is clear that he unthinkingly and hastily assumed a risk which his employer did not require him to take, and had no reason to believe that he would take. He knew that this machine was liable at any time to

throw out a board.  He could and should have kept out of its path.  His employer is not responsible for the consequences of his unnecessary and thoughtless act.

Judgment reversed, and new trial ordered.    .

MOORE, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.